UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOME OWNERS INSURANCE COMPANY,

      Plaintiff,

v.

RONALD MOFFITT, et al.,

      Defendants,

v.

MARVIN OKUN AGENCY, INC., et al.,

      Third-Party Defendants.
      _____/

File No. 1:11-CV-517

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter is before the Court on three motions for summary judgment: (1) third-party defendant Marvin Okun's motion against third-party plaintiffs Ronald and Cathleen Moffitt (the "Moffitts"), and A & P Enterprises of Michigan, LLC (Dkt. No. 159); (2) Plaintiff Home Owners Insurance Co.'s motion against all defendants on the first amended complaint (Dkt. No. 175); and (3) Plaintiff Home Owners' motion against the Moffitts and A & P on the amended counterclaim (Dkt. No. 180). For the reasons that follow, Okun's motion will be granted, Home Owners' motion on the complaint will be denied, and Home Owners' motion on the amended counterclaim will be granted in part.

I.

In March 2007, the Moffitts met with Troy Seaver, an employee of the Marvin Okun Agency (the "Agency"), to fill out a Homeowners Application for insurance for the property located at 68298 52nd Street, Lawrence, MI. (Dkt. No. 19, First. Am. Compl. ¶¶ 7-8.) Following the submission of this application, an insurance policy was issued by Home Owners Insurance. In subsequent years, properties located at 68490 52nd Street and 68241 52nd Street were added to the policy. (*Id.* ¶ 9.) On December 20, 2010, a fire occurred at the initially insured property, 68298 52nd Street, causing substantial damage. (*Id.* ¶ 10.)

The Moffitts submitted an insurance claim to Home Owners and in return received $200,120.50. (*Id.* ¶¶ 16-17.) Additional claim payment checks in the amount of $116,000 and $7,360 were evidently tendered to the Moffitts but refused. (*Id.* ¶ 18.) Last, $7,860 was paid to Lawrence Township Escrow by Home Owners on behalf of the Moffitts. (*Id.* ¶ 19.)

Home Owners alleges that, contrary to the application for insurance, the Moffitts do not own the property where the fire occurred. (*Id.* ¶ 13.) This property is evidently owned by A & P, an LLC at least partially managed by the Moffitts although not owned by them. (*Id.* ¶¶ 6, 13.)

II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for

summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. Claims at Issue**

**1. Plaintiff's First Amended Complaint**

Plaintiff's first amended complaint seeks contract rescission (Count I) on account of the fact that the Moffitts falsely represented that there was no business located at the insured location, that they owned the property in question, and that they had an insurable interest in the property. Plaintiff also brings a claim for unjust enrichment (Count II) on account of the Moffitts accepting $200,120.50 from Home Owners despite having no right to receive

payment. Last, in the event the insurance policy is not rescinded, Plaintiff seeks interpleader (Count III) to ascertain to whom it owes money. The United States and State of Michigan are included as interpleader defendants because both filed tax liens against the Moffitts prior to the fire and have threatened action against Home Owners for the insurance proceeds. Since then, the parties have stipulated to, and the Court has granted, the dismissal of the State of Michigan because it was determined that the debt owed is actually a debt owed by Ronald Moffitt's son, Ronald Bruce Moffitt. (Dkt. Nos. 152-53.)

**2. Defendants' Amended Counterclaim/Third-Party Complaint**

The Moffitts and A & P have filed a counterclaim and third-party complaint. (Dkt. No. 61.) First, they seek reformation of the insurance contract (Count I) on account of their contention that Home Owners was aware that A & P was the owner of the property in question when it issued the insurance policy. They allege that the "insured" listed on the insurance contract should have read "A & P Enterprises of Michigan, LLC" instead of "Ron and Kathleen [sic] Moffitt" and that this was a mutual mistake of fact.

The Moffitts and A & P also allege breach of contract (Count II) by Home Owners. They allege that Home Owners has failed to pay the full value of the loss. They also allege that the insurance contract does not allow Home Owners to offset any payments by paying any amount to a third party or withholding payments.

Last, they allege negligence (Count III) against Home Owners and third-party defendants the Agency, Okun, and Seaver.

**B. Analysis**

    **1. Okun's motion**

Marvin Okun seeks summary judgment on the negligence claim in the third-party complaint. The Moffitts have testified that the insurance policy in question was procured for them by Troy Seaver of the Marvin Okun Agency and that they never talked to Okun himself. (Dkt. No. 159, Exs. A-B, R. & C. Moffitt Deps.) Consequently, as an uninvolved corporate officer and shareholder, Okun argues that he is immune for the alleged negligent acts of Seaver and/or the Agency. "Michigan courts typically consider corporations legally distinct from their shareholders, even if a single shareholder owns all the stock." *Dep't of Consumer Indus. Servs. v. Shah*, 600 N.W.2d 406, 411 (Mich. Ct. App. 1999) (citing *Bourne v. Muskegon Circuit Judge*, 41 N.W.2d 515, 522 (Mich. 1950)); *accord Elliott v. Smith*, 209 N.W.2d 425, 427 (Mich. Ct. App. 1996). Thus, Okun is correct that he is distinct from the Agency, and the Moffitts and A & P have not presented any evidence to support piercing the corporate veil.

However, the Moffitts and A & P argue that this motion is moot because the third-party complaint alleges only negligent supervision/training as a theory of liability against Okun, and not piercing the corporate veil. The motion is not moot. The third-party complaint is entirely ambiguous as to the theory of liability as to Okun. It only mentions "failure to supervise" in regard to Home Owners and the Agency. (Dkt. No. 61, ¶¶ 36-37.) Moreover, neither hiring or training is mentioned in regard to any third-party defendant, and

5

no particular wrongdoing of Okun is identified.

Even if the third-party complaint did adequately plead negligent supervision by Okun, Okun is still entitled to summary judgment. "[E]mployers [are] subject to liability for their negligence in hiring, training, and supervising their employees." *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 226 (Mich. 2006). However, the theory of Okun's liability presented to the Court in the Moffitts and A & P's briefs is essentially one of res ipsa loquitur negligence rather than supervisory negligence. Essentially, the Moffitts and A & P claim that because an employee (Seaver) was negligent it must somehow be the fault of the employer, whether through negligent training or supervision. However, the Moffitts and A & P have failed to identify any training or supervisory negligence *on Okun's part*.

The Moffitts and A & P point to Okun's deposition testimony to attempt to show wrongdoing. However, this testimony torpedoes their claim because it shows that Okun did not have a duty to train or supervise Seaver and did not breach any such duty. First, the Moffitts and A & P point to Okun's alleged testimony that no one provided training on how to fill out an application. (Dkt. No. 174, PageID# 1890.) However, the testimony pointed to only indicates that *insurance companies* which come in and make presentations to the Agency's employees do not provide training on how to fill out an insurance application. (Dkt. No. 174, Ex. 1, at 8.)[1] Thus, this does not establish a duty or breach on Okun's part.

---

[1] In fact, Okun testified that only employees who have been previously licensed and trained are hired, meaning the Agency only conducts limited training. (Dkt. No. 174, Ex. 1, Okun Dep. 6-7.)

Next, the third-party plaintiffs point to testimony that Okun did not train Seaver. (Dkt. No. 174, PageID# 1890.) But the fact that Okun did not personally provide any training to Seaver does not establish that he had a duty to provide training or that he breached that duty. Next, the third-party plaintiffs point to Okun's testimony about the procedures in place for when additional properties are added to an insurance policy: namely, the completion of an additional form. (*Id.*) They then jump to the conclusion that Okun must have negligently trained and supervised Seaver because properties were added to the Moffitts' insurance yet that form has not been produced. However, Seaver's alleged negligence (or the negligence of "someone" regarding that form) is not evidence that Okun was negligent.

Last, the third-party plaintiffs present proposed expert testimony from John Kyes that Okun was negligent in the supervision and training of Seaver. (Dkt. No. 174, Ex. 2.) However, the proposed expert report fails to identify any wrongdoing of Okun himself other than the conclusory statement that "[i]t is with a reasonable degree of certainty that Okun and Okun Agency were negligent in their training and supervision of agency producer Troy Seaver." (Dkt. No. 174, Ex. 2, ¶ 11.) In Kyes deposition, he testified that he was unaware of any personal responsibility on the part of Okun as to the hiring, training, or supervising responsibilities of Seaver. (Dkt. No. 174, Ex. 4, Kyes Dep. 72-73.) He further testified that he did not know whether or not Okun acting differently in some manner would have made any difference in what happened. (*Id.* at 73.)

In conclusion, the third-party plaintiffs' complaint contains no allegation that Okun

had a duty to supervise or train Seaver at all, let alone in regard to the circumstances of this case. Moreover, it contains no allegations of wrongdoing on the part of Okun that are separate from the alleged wrongdoing of the Agency and Seaver.[2] Nor have the third-party plaintiffs presented any evidence of wrongdoing by Okun. Last, the Court has been presented with Okun's uncontradicted testimony that (a) he was not personally responsible for training or supervising Seaver (Dkt. No. 174, Ex. 1, Okun Dep. 6-7, 11), and (b) he did not in fact train or supervise Seaver at all, let alone negligently (*Id.* at 47). Thus, there is no genuine dispute as to a material fact, and Okun is entitled to summary judgment on the negligence claim.

**2. Home Owners' motion regarding the complaint**

Home Owners seeks summary judgment on its claims against the Moffitts and A & P for contract rescission and unjust enrichment.

"It is the well-settled law of this state that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio." *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998) (citing *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869 (1995)). "[A] fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against

---

[2] Most of the paragraphs refer to the wrongdoing of "Third Party Defendants" as a group. These paragraphs regard representations and omissions made to Ronald Moffitt. However, Okun never had any discussions with Ron Moffitt and was not involved in the insurance policies in question.

8

so as to bring about a rejection of the risk or the charging of an increased premium.'" *Oade v. Jackson Nat. Life Ins. Co. of Mich.*, 632 N.W.2d 126, 131 (Mich. 2001) (quoting *Keys v. Pace*, 99 N.W.2d 547, 551 (Mich. 1959)). "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash*, 532 N.W.2d at 872. "[A]n insurer has no duty to investigate or verify the representations of a potential insured." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 576 (Mich. 2012).

Home Owners alleges that there is no genuine issue of fact that the following material misrepresentations were made: (1) that the Moffitts were retired; (2) that the Moffitts owned the property in question; (3) that they had not had any insurance policies canceled; and (4) that no business was conducted on the premises. The "Homeowners Application" unambiguously makes these representations, and at the end of the application, Ron Moffitt signed his name directly underneath the statement "[t]he facts stated on this application are true to the best of my knowledge and are to be relied upon by the Company for the purposes of issuing the insurance I have requested, and any renewals of insurance." (Dkt. No. 176, Ex. A.) However, contrary to Home Owners' allegations, there is a genuine issue of material fact as to whether any of these representations were material or relied upon.

Home Owners has not alleged or offered evidence that it would not have issued the insurance policy if it had known that the Moffitts were not retired. Thus, there is a genuine

9

issue of material fact as to whether any such misrepresentation was material or relied upon.

As for ownership, Home Owners points to the affidavit of its proposed expert, Ken Armbrustmacher, which states that if Home Owners had known that the property was owned by an LLC and not the Moffitts, the underwriting guidelines of Home Owners would not have allowed the issuance of the homeowners policy. (Dkt. No. 176, Ex. E, ¶ 6.) However, the Moffitts correctly point out that these "underwriting guidelines" have never been produced. Moreover, according to an email from Christopher Massey sent after Home Owners discovered the LLC's ownership interest, "[e]ven though an LLC we would have still written the policy so rescinding the policy for this would not be plausible." (Dkt. No. 234, Ex. 22.) Last, Ronald Moffitt has testified that he told Seaver that the LLC owned the property but he owned the house. (Dkt. No. 233, Ex. 16, R. Moffitt Dep. 57-58.) Thus, more factual development is needed to determine whether a misrepresentation was made and, if so, whether it was material and/or relied upon.

There is also a genuine issue of material fact regarding the application's indication that Ron Moffitt had not had any previous insurance policies cancelled. Home Owners argues that this misrepresentation is material because of Armbrustmacher's testimony that "if Ronald Moffitt had answered truthfully . . . the underwriting practices of Home Owners Insurance Company would disqualify the Moffitts from insurance coverage." (Dkt. No. 176, Ex. E, ¶ 7.) As stated, these "underwriting guidelines" have never been produced. Moreover, the Moffitts contend that their history with Home Owners contradicts

10

Armbrustmacher's testimony. They have put forth evidence that the Moffitts missed payments to Home Owners a handful of times, resulting in cancellation of multiple prior insurance policies, but Home Owners always issued new policies. (*See* Dkt. No, 235, Exs. 27-28.) Thus, more factual development is needed.

Last, the application indicated that no business was conducted on the property. However, there is a genuine issue as to whether this was even a misrepresentation. Ron Moffitt testified that "[m]y business is not done in the that home. . . . I don't conduct the business in my home." (Dkt. No. 234, Ex. 23, R. Moffitt Dep. at 45-47.) Moreover, Cathleen Moffitt has testified that she did not move her business into the home until three years *after* the issuance of the policy. (Dkt. No. 176, Ex. B, C. Moffitt Dep. 8.) According to Massey's email, "[t]here is no exclusion for business use under Coverage A. . . . I think we would have handled things differently if the business had been in the home *at the time of the application*." (Dkt. No. 234, Ex. 22 (emphasis added).)

In conclusion, the record does not establish that Home Owners is entitled to judgment as a matter of law on its contract rescission claim. Because the unjust enrichment claim depends on Home Owners succeeding on its contract rescission claim, the Court will also deny summary judgment on that claim.[3]

---

[3]Following their arguments in the response brief, the Moffitts briefly contend that they are entitled to summary judgment on the complaint based on the same arguments addressed above. However, as discussed, there are genuine issues of material fact, and no party is entitled to summary judgment at this time.

**3. Home Owners' motion on the counterclaim**

Last, Home Owners has moved for summary judgment on the first amended counterclaim.

*a) Reformation*

"Courts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties." *Mate v. Wolverine Mut. Ins.*, 592 N.W.2d 379, 384 (Mich. Ct. App. 1998).

The Moffitts' theory is that both parties were aware that A & P owned the house and there was a mutual mistake which resulted in the Moffitts being listed as the "insured" on the application instead of A & P as intended. (Dkt. No. 236, PageID# 3206.) This is entirely contradicted by the record. In his deposition testimony, Ron Moffitt claimed he told Seaver that A & P owned the property, but *the Moffitts* owned the house. (Dkt. No. 233, Ex. 17, R. Moffitt Dep. 132.) Moreover, Home Owners sent all renewal policies and premium notices to the Moffitts, all listing the Moffitts as the insured, and it was the Moffitts who paid on these notices. Both parties acted as if the Moffitts were the insured party, which would not have happened if one or both were aware that A & P was supposed to be the insured party. Moreover, according to the Moffitts' proposed expert, Ron and Cathleen believed *they* owned the home. (Dkt. No. 174, Ex. 2, ¶¶ 8, 18.) Nor has any evidence been introduced showing that Seaver was aware A & P owned the house at the time of the insurance

application.[4] All the evidence points to both Seaver and the Moffitts believing that the Moffitts owned the house and were the proper party to be insured.

Consequently, there is no mutual mistake in the contract *as to the true intent of the parties*; the contract says exactly what the parties wanted it to. While in that case there is a mutual mistake *as to the owner of the house*, that type of mistake is not a justification for reformation because the contract accurately reflects the meeting of the minds. The parties never intended to insure A & P and so the substitution of A & P's name is unwarranted. Because there is no genuine dispute of material fact as to the intentions of the contracting parties, Home Owners is entitled to summary judgment on the contract reformation claim in the amended counterclaim.[5]

### b) Breach of contract

Home Owners argues that the Moffitts' claim for breach of contract[6] must fail because

---

[4]The application states "Legal description attached," which the Moffitts take as evidence that the deed showing A & P as the owner was included with the application. However, there is a place for a check mark next to this phrase and there is no mark. (*See* Dkt. No. 176, Ex. A.) Additionally, Okun has testified that the Agency never attaches the deed. (Dkt. No. 174, Ex. 1, Okun Dep. 42-43.)

[5]The Moffitts request for other relief if the Court finds reformation inapplicable – the response brief states the Court should "consider whether it can fashion any other sort of appropriate relief for the Moffitts" (Dkt. No. 230, at 16) – will be denied. Such a claim was not pleaded, and it is not the province of the Court to make claims and arguments for the parties.

[6]The Court notes that Home Owners disputes paragraphs 27 and 28 of the counterclaim which state that Home Owners cannot bring a claim until "[a]fter making payment under the policy." (Dkt. No. 61.) Home Owners is correct that it has not breached any duty to pay before bringing suit because the contractual language referred to in these paragraphs preserved Home Owners' right to bring a claim to recover payments if they were paid out wrongfully rather than
(continued...)

there is no valid contract on account of the policy covering a dwelling owned by the Moffitts and the Moffitts not actually owning the house that burned. The record is unclear as to whether ownership is a prerequisite to a valid insurance contract in this case. The policy defines "Residence premises" as "the one or two family dwelling where you reside . . . ." (Dkt. No. 184, Ex. I.) "Coverage A – Dwelling" states that the insurance covers "your dwelling located at the residence premises . . . ." (*Id.*) Home Owners argues that these two definitions taken in conjunction establish that the dwelling must be owned by the insured. However, these definitions never say that ownership is required. While it uses the adjective "your," that could just as easily refer to the insured having to *live in the dwelling* as it could to the insured having to *own the dwelling*. This is not a basis for finding the contract invalid on summary judgment.

Home Owners also asserts the contract is invalid because the dwelling was not "owner occupied." Its expert, Armbrustmacher, alleges that this was an underwriting condition. (Dkt. No. 176, Ex. E.) Similarly, the Moffitts' expert testified that owner-occupied was a condition of insurance. (Dkt. No. 174, Ex. 2.) However, the foundation for this conclusion by the experts is unclear at this point. Such a requirement does not appear in the insurance policy, and thus there is nothing outside of this proposed expert testimony to suggest that the contract is invalid because the dwelling was not owner occupied.

---

⁶(...continued)
foreclosing a suit brought prior to full payment. (*See* Dkt. No. 184, Ex. I, PageID# 2223.) Thus, Home Owners is entitled to bring this suit.

Third, Home Owners asserts that the Moffitts' misrepresentations of material fact in the claim process voids the coverage. According to the policy:

> This entire policy is void if, whether before, during or after a loss, any insured has:
> a. Intentionally concealed or misrepresented any material fact or circumstances;
>
> b. Engaged in fraudulent conduct; or
>
> c. Made false statements;
>
> Relating to this insurance.

(Dkt. No. 184, Ex. I.) While a material misrepresentation would be grounds for voiding the contract, as discussed more fully in the "rescission" analysis above, there is a genuine dispute as to material facts regarding the four alleged misrepresentations on the application.

Because there is a genuine dispute as to issues of material fact, Home Owners is not entitled to summary judgment on the breach of contract claim.

### c) Negligence

Last, Home Owners seeks summary judgment on Count III of the amended counterclaim because it is not vicariously liable for the negligence of the Agency, Okun, or Seaver, who are not agents of Home Owners. "An independent insurance agent, or insurance broker, is ordinarily the agent of the insured, not the insurer . . . ." *Mayer v. Auto-Owners Ins. Co.*, 338 N.W.2d 407, 409 (Mich. Ct. App. 1983); *accord Harwood v. Auto-Owners Ins. Co.*, 535 N.W.2d 207, 209 (Mich. Ct. App. 1993). Here, Okun testified that the Agency has always been an independent insurance agency that is authorized to write insurance for a

15

number of companies. (Dkt. No. 186, Ex. U, Okun Dep. 58-59.) There is no argument to the contrary and no evidence of any special relationship between Home Owners and the Agency. Thus, the Agency and its employees were agents of the insured and not Home Owners, and Home Owners cannot be held vicariously liable for their negligence.[7] There is no genuine dispute as to a material fact for this claim, and thus Home Owners is entitled to summary judgment.

**IV.**

Consequently, Okun's motion for summary judgment will be granted, Home Owners' motion for summary judgment on the complaint will be denied, and Home Owners' motion for summary judgment on the counterclaim will be granted in part.

An order consistent with this opinion will be entered.


Dated: March 22, 2013 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE

---

[7] The Moffitts vaguely argue that under the Producer Licensing Model Act, those licensed to sell insurance are now required to be appointed as an agent of the insurer. While this is true, Mich. Comp. Laws § 500.1208a, such an appointment does not establish a principal-agent relationship for liability purposes. Instead, all it does is allow an insurance producer to sell insurance policies for the insurer once the insurer certifies that the producer is properly licensed. Thus, any appointment of the Agency or Seaver as an insurance agent of Home Owners would not create a principal-agency relationship.