UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOME OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.

RONALD MOFFIT, et al.,

      Defendants.

File No. 1:11-cv-517

HON. ROBERT HOLMES BELL

## OPINION

This case is, as Magistrate Judge Scoville noted during the discovery hearing held January 23, 2013, a "simple little fire insurance case that has become way more complicated and rancourous than virtually any 17 other insurance case[s] that I've seen in this court in 25 years" (Tr., Dkt. No. 215 at 23). That rancor continues—and the case becomes ever more complicated—with the filing of Defendants A&P Enterprises Ronald Moffit, Cathleen Moffit's (Defendants[1]) six motions in limine, five of which are relevant to the first trial in this case (Dkt. Nos. 304, 306 , 309, 311, and 315). Plaintiff has filed responses to these motions (Dkt. Nos. 323, 324, 325, 326, 327, and 328). For the reasons that follow, Defendants' First, Second, Third, and Sixth motions in limine are denied and their Fourth motion is granted.

### I. FIRST MOTION: TO PRECLUDE TESTIMONY OF WITNESSES ARMBRUSTMACHER AND MASSEY

Defendants argue the Witnesses Armbrustmacher and Massey should be precluded from

---

[1]Defendant United States Department of Treasury – Internal Revenue Service, took no part in the briefing of these motions.

testifying because Plaintiff failed to submit to the Court an Expert Report under Fed. R. Civ. P. 26(a)(2). Plaintiff argues that neither witness is required to submit a report because neither was retained specially to give testimony, but rather both are full-time employees of Plaintiff.

A proposed expert must file a report if "the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(B)(2). The report must include the signature of the expert and contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* A primary purpose of a Rule 26(a)(2)(B) report is to put opposing counsel on notice of an expert's proposed testimony so as "to avoid an ambush at trial." *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010).

At the January 23, 2013 Discovery Motion Hearing, Magistrate Judge Scoville noted that, with regard to Witnesses Armbrustmacher and Massey

> 26(a)(2)(B) does not require production of an expert witness report by these two people because they were not retained or specially employed to provide expert testimony, nor is giving expert testimony a regular part of what they do, their duties. So they're experts for the purpose of identification but not for the purpose of a report. Sixth Circuit has recognized this distinction in *Felden v. CSX Transport*, 42 F.3d 866, 869 (6th Cir. 2007)

(Tr., Dkt. No. 215 at 34). Defendants made no objection to this determination at the hearing, nor did

2

they timely file an appeal to this Court.

Magistrate Judge Scoville also noted "the rule does require identified experts . . . to at least identify their opinions and the basis therefore—that's subsection (c)—so that the other side is not left completely in the dark" (Tr., Dkt. No. 215 at 34). Magistrate Judge Scoville concluded that Witness Armsbrustmacher's disclosure satisfied this requirement "regarding the application, insurance policy, the lack of insurable interest, claim and payments made, coverage, underwriting issues and standards. It's clear enough that this is the guy who was going to testify about underwriting, and the defendants chose not to depose him and that's on them" (*id.*).

With regard to Witness Massey's disclosures, he concluded, "Massey's disclosure again is focused on underwriting issues, and to the extent that he was going to talk about lack of insurable interest, coverage under the policy, underwriting issues and standards, defendants were on notice that this is what Massey was going to talk about and if they wanted to depose him they should have" (*id.* at 35).

Plaintiff, therefore, was justified in relying on Magistrate Judge Scoville's determination, and should not be precluded from presenting these witnesses in the absence of an expert report.

However, even if Magistrate Judge Scoville's determination is not controlling, Plaintiff's submissions have satisfied Rule 26's requirements. Plaintiff satisfied the disclosure requirements in its Disclosure of Expert Witnesses (Dkt. No. 38), which went through the enumerated requirements line-by-line. Although this disclosure did not include the experts' signatures, Witnesses Armbrustmacher and Massey later submitted signed affidavits adopting the disclosures (Dkt. Nos. 192-2 and 192-4, respectively). *See Jenkins v. Barlett*, 497 F.3d 482, 488 (7th Cir. 2007) ("the plaintiffs cured the main defect in the expert report, the absence of the physicians' signatures, by

submitting sworn affidavits from the physicians adopting the contents of the October 1, 2003 letter").

Magistrate Judge Scoville already determined this issue. Defendants' motion seems to be an attempt to take another bite at the apple, wasting this Court's valuable time. In any event, the Court's independent evaluation of the arguments reveals that Defendants are wrong on the application of the law to these witnesses, even if the witnesses are treated as ones required to submit a report under Rule 26. For these reasons, the motion is properly denied.

## II. SECOND MOTION: TO DISQUALIFY WITNESSES ARMBRUSTMACHER AND MASSEY AS EXPERTS

Defendants argue that Armbrustmacher and Massey should be disqualified as Expert Witnesses because they fail to pass the four factors suggested for evaluating proposed expert testimony set out in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Despite the Supreme Court's admonition that inquiry into expert testimony under *Daubert* is "flexible," Defendants suggest a mechanical application of the four factors to Witnesses Armbrustmacher and Massey.

Although the Supreme Court has endorsed the use of *Daubert's* general principles to evaluating nonscientific expert testimony, the ultimate undertaking is for "the trial judge [to] determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592).

The affidavits of both witnesses (Dkt. Nos. 192-2 and 192-4) clearly establish that these witnesses are qualified to testify as experts in the field of insurance underwriting and that their testimony will be relevant and reliable, the cornerstone of evaluating expert testimony. Defendants' argument rigidly applying *Daubert*, to the contrary, stretches credulity and borders on frivolous. This

motion is therefore properly denied.

## III. THIRD MOTION: TO EXCLUDE EVIDENCE THAT DEFENDANTS MADE MISREPRESENTATIONS ON THEIR INSURANCE APPLICATION REGARDING THEIR RETIREMENT STATUS OR THAT THEY HAD BEEN DENIED INSURANCE COVERAGE

Defendants argue that Plaintiff failed to include as an allegation on the First Amended Complaint that Defendants made material misrepresentations on their initial insurance application about Defendants' retirement status or previous denials of insurance coverage. Defendants argue that because these facts were never pleaded, Plaintiff should be precluded from introducing evidence or testimony related to this allegation. Defendants argue in a conclusory manner that even if such evidence is relevant, it should be excluded under FRE 403.

Although these specific material misrepresentations were never pleaded, they do fall under the umbrella of the general claim of material misrepresentations that Plaintiff argues voids the contract. Further, Plaintiff included as an exhibit the original application for insurance coverage, which states that both Defendants are retired (Amend. Compl., Ex. 1, Dkt. No. 19 at 10). Defendants also checked "no" to a question that asked "Has any company canceled, refused to write or declined renewal for this applicant?" (*id.* at 11). Therefore, as Plaintiff argues in its response, Defendants have been on notice for a long time that this may be an issue.

Testimony that these misrepresentations (if they prove to be false) would have affected the underwriting process is relevant. Defendants have not convincingly argued that allowing this evidence would result in "unfair prejudice, confusing of issues, misleading the jury, and causing undue delay or waste of time during trial." In fact, Defendants' statement that "there is no factual or

expert support" for this evidence is *itself* misleading. This motion, therefore, is properly denied.

## IV. FOURTH MOTION: TO EXCLUDE EVIDENCE OF FRAUD IN THE CLAIMS PROCESS

Defendants move to exclude evidence/preclude the defense of arson/fraud in the claims process. Defendants' overly lengthy brief could have been avoided by simple reference to Magistrate Judge Scoville's January 23, 2013 Order (Dkt. No. 203) denying Plaintiff's motion to amend its complaint to include defenses of arson/fraud in the claims process. Plaintiff never appealed this decision to this Court. Plaintiff concedes as much in its response. Per Magistrate Judge Scoville's order, Plaintiff cannot now raise arson/fraud in the claims process as a defense, and this motion, though unnecessary, is properly granted.

## V. SIXTH MOTION: TO EXCLUDE HOME OWNERS' EXHIBIT 1 AND OTHER EXHIBITS OR WITNESSES NOT DISCLOSED DURING DISCOVERY

Defendants' final motion deals with Plaintiff's Exhibit 1 (the March 2007 application for insurance on the property in question) and applications for three additional policies: one issued in March 2006 and two issued in 2007. Defendants state, "[t]here is no doubt that Home Owners has these applications in its possession. However, Home Owners' [sic] has refused to produce them . . . ." (Br., Dkt. No. 317 at 4). Defendants go on to state

> Home Owners'[sic] knows these applications are significant because they contain data and information that is essential to the Moffits' case. Rather, Home Owners wants this Court and other parties to believe that the March 2007 insurance application is the controlling application, even though clear evidence shows that it was sent to Citizens Insurance Company and not Home Owners Insurance Company

(*id.*). Defendants argue that because Plaintiff has willfully disobeyed a discovery order to produce these documents, Rule 37(b) sanctions are in order (*id.* at 3-6).

First, it is noted that in reviewing all of the discovery orders in this case (Dkt. Nos. 136, 137, 169, 173, 205, 206, and 225) as well as the transcript of the discovery hearing (Dkt. No. 215), there is no Court order specifically dealing with these documents, and thus it is unclear why Rule 37(b) would apply. It does appear that some discovery took place between Plaintiff and Third-Party Defendants, but that all the documents exchanged between Plaintiff and Third-Party Defendants (which would presumably include these applications, if they exist) has been surrendered to Defendants (Dkt. No. 205 at 1).

The "clear evidence" that purportedly shows that the March 2007 application was sent to Citizens Insurance and not Home Owners is a ledger from Third-Party Defendant's insurance agency that lists Citizens as the company to which the application would be sent. However, Plaintiff's Exhibit 1 (Dkt. No. 19 at 10) clearly shows that this application was received by Home Owners. Further, because a policy did issue from Home Owners, it seems disingenuous for Defendants to argue that an application for such insurance was never submitted. The policy Defendants have attached as an exhibit (Dkt. No. 315-1) clearly expired in March 2007, so it is not unreasonable to conclude that Defendants applied for a new policy.

Whatever happened in 2006, it is clear that in 2007, Defendants submitted an application for insurance upon which a policy issued. This policy was renewed and was in force when the house on the property burned to the ground in 2010. Defendants never moved for an order regarding these documents, but had it so moved, Magistrate Judge Scoville likely would have denied such a request under Rule 26(b)(2)(C), as the March 2007 application is the one Plaintiff put in controversy.

Plaintiff has clearly relied on the representation made in the March 2007 application (Ex. 1, Dkt. No. 19 at 10) as the basis for its recision claim. The Court never specifically ordered that other

insurance applications be produced, therefore Rule 37(b) sanctions are not warranted. Neither is exclusion of Plaintiff's exhibit evidencing Defendants alleged misrepresentations. This motion is therefore properly denied.

## VI. CONCLUSION

These motions border on being frivolous and misleading. They were also difficult for the Court to evaluate because the citations of the record were either non-existent or very vague. In addition, the strong, strident language is unfitting of professional lawyers, and inappropriate to the controverted facts. Counsel are reminded they are officers of this Court, and while they (or their clients) may disagree, that does not provide license to be disagreeable.

The Court will issue an Order consistent with this Opinion

Dated: September 30, 2013                /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE