UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOME OWNERS INSURANCE
COMPANY,

      Plaintiff,

v.

RONALD MOFFIT, et al.,

      Defendants.
_____/

File No. 1:11-cv-517

HON. ROBERT HOLMES BELL

## **OPINION**

This action between Plaintiff/Counter-Defendant Home Owners Insurance Company ("HOIC") and Defendants/Counter-Plaintiffs Ronald and Cathleen Moffit ("Moffits") came before the Court for a bench trial on October 15, 2013. The Court makes the following findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52(a).

### I.    BACKGROUND

On March 14, 2007, Troy Seaver of Marvin Okum Agency, Inc., submitted an application for homeowner's insurance to HOIC on behalf of the Moffits for the Moffits' home located at 68298 52nd Street, Lawrence, Michigan. An insurance policy issued based on the application was renewed annually. On December 20, 2010, a fire destroyed the house. Through the course of the claims process HOIC became aware that (1) A&P Enterprises of Michigan, LLC, ("A&P") owned the property at 68298 52nd Street, and (2) the Internal Revenue Service ("IRS") and the State of Michigan had filed tax liens against the Moffits.

HOIC filed an interpleader suit in Van Buren County Circuit Court on March 11, 2011, naming the Moffits, A&P, the IRS, and the Michigan Department of Treasury as Defendants.

Because the insurance limits exceeded the total amount of the tax liens, HOIC filed its action to determine to whom the insurance proceeds should be paid. The United States removed the action to this court on May 19, 2011 (Dkt. No. 1). As the claims process continued, HOIC decided that the ownership issue, along with representations made on the March 14, 2007 Application ("Application") (Ex. 1, Dkt. No. 19) that it considered to materially misrepresent the underwriting risk, entitled HOIC to rescind the insurance policy. HOIC amended its complaint accordingly, adding Count I for rescission, Count II for unjust enrichment for insurance proceeds already paid, and maintaining Count III for interpleader (Am. Compl., Dkt. No. 19). Specifically, HOIC argued that the Moffits made material misrepresentations entitling HOIC to rescind the contract when they represented (1) that they both were retired; (2) that they owned the home; (3) that they had never had other insurance policies cancelled; and (4) that no business was conducted on the property.

The Moffits filed a counterclaim, requesting reformation of the insurance contract (Count I), breach of contract (Count II), and negligence (Count III) (Am. Counterclaim., Dkt. No. 61). Included in the counterclaim was a third-party complaint against Marvin Okum Agency, Inc., Marvin Okum, and Troy Seaver for negligence. The Michigan Department of Treasury was dismissed because the debt owed was actually that of Ronald Moffit's son (Dkt. Nos. 152-53).

After a protracted discovery, HOIC and Marvin Okum filed motions for summary judgment. On March 22, 2013, the Court first determined that the Moffits had not stated a theory of liability against Marvin Okum personally, nor shown evidence that he was negligent, and dismissed him from the case. The Court also determined that there were genuine factual disputes with regard to HOIC's claim for rescission and unjust enrichment, and with regard to the Moffits' breach of contract claim.[1]

---

[1] The issue of interpleader was not before the Court.

The Court, however, dismissed the Moffits' claims for reformation and negligence against HOIC.

On motion, the Court ordered on June 7, 2013 that the trial be bifurcated, with the first trial to proceed between HOIC and the Moffits. If HOIC was successful on its rescission claim, the Moffits could pursue Marvin Okum Agency, Inc. and Troy Seaver on their negligence claim.

The first bench trial took place on October 15, 2013. The parties presented the testimony of Troy Seaver, Eric Jennings, Christopher Massey, Kenneth Armbrustmacher, Jennifer Armstrong, and Ronald Moffit. Testimony centered on the claims process, the history and ownership of 68298 52nd Street, and the underwriting issues surrounding the Application. Pursuant to Fed. R. Civ. P. 52(a), the Court makes the following findings of fact and conclusions of law.

## II.   FINDINGS OF FACT

The house to be insured (the "house") was located at 68298 52nd Street, Lawrence, Michigan (the "property"). Ronald Moffit constructed the house largely by himself, with occasional assistance from sub-contractors. The Moffits self-financed construction of the house. The property was deeded to A&P, an LLC owned by David and Jennifer Bennett, the Moffits' daughter and then-son-in-law. The Moffits believed that they owned the structure of the house itself and A&P owned the underlying real property.

On March 14, 2007, the Moffits submitted an application for homeowner's insurance to HOIC, prepared by Troy Seaver at the Marvin Okum Agency, Inc. Mr. Seaver completed an electronic application form, supplied by HOIC. Mr. Seaver conducted an interview with the Moffits to answer the questions on the form. Based on the information provided by the Moffits, Mr. Seaver selected HOIC's "HOMEOWNERS APPLICATION" and applied for a personal-lines homeowners' insurance policy.

In the Application, Mr. Seaver related the address of the house, the Moffits' birth dates and that they were retired, that the Agency had represented them for three years, and had written auto insurance policies during that time. Mr. Seaver described the house as being constructed in 2006, specifically described its composition, and its proximity to a fire department. The policy to be issued was described in the application as a guaranteed home replacement cost policy. In addition to the structure, the application listed personal contents, including jewelry and guns.

The Application contained a number of boxes for Mr. Seaver to check to give information to HOIC. Mr. Seaver checked boxes to relate no rental of the property; no business, farming, or daycare; no unusual hazards; no cancellation or refusal to underwrite policies for the Moffits; no insurance with HOIC in the last five years; no animals kept on premises; and no outbuildings.

Nowhere in the Application, despite it being a "homeowners' application," was reference made to who was/were deedholder(s) to the property/house, nor who held title. Further, nowhere in the policy itself (Pl. Ex. 2) does the policy explicitly state that the insured must own the residence, nor that the residence must be owner occupied.

The Moffits' house sustained substantial damage in a fire on December 20, 2010. Eric Jennings testified that he was the claims adjuster assigned to the Moffits' claim. Mr. Jennings was responsible for investigating the loss and making payments. Jennifer Armstrong testified that she supervised the claim because of the size of the loss. Ms. Armstrong testified that she personally approved all payments. Mr. Jennings testified that the relevant lines of insurance under the policy were for Dwelling, Personal Property, and Additional Living Expenses. These lines had limits of $262,000, $131,000, and $52,400, respectively, subject to an overall deductible of $500. Mr. Jennings further testified that an independent appraisal of the property revealed the actual cash value

to be $260,000. Checks were issued and cashed in the amount $14,500 for demolition, $15,000 for an advance on the contents, $170,620.50 toward the dwelling claim, and $7,860 was placed in escrow to Lawrence Township pending demolition.[2] Additional checks for $116,000 for the remainder of the contents and $7,360 for additional living expenses were tendered to the Moffits, but never cashed. HOIC issued stop-payment orders on these checks when it filed its amended complaint.

As early as January 2011, HOIC became aware through Mr. Jennings's investigation that the property was deeded to A&P. HOIC initiated a coverage inquiry, over which there was internal disagreement. Chris Massey, manager of the local office handling the Moffits' claim, testified that he believed that coverage should not be afforded because the house was not owner occupied. However, Kathy Adcock, HOIC's district manager for western Michigan, directed that the loss would be covered and that claim payment should continue.

Ken Armbrustmacher, an underwriter with HOIC since 1995, testified extensively as to HOIC's underwriting policies. Mr. Armbrustmacher testified that the fact that the property was owned by a limited liability organization ("LLC") was a problem from an underwriting perspective because the policy issued was a homeowners' policy. Mr. Armbrustmacher testified that HOIC has policies other than a homeowners' policy designed for circumstances in which an LLC owns a residential dwelling that the Moffits could have selected. He also testified that a homeowners' policy such as the one at issue here might be issued to an LLC, but only if the LLC was set up for estate planning purposes and the owners of the LLC are the occupants. Mr. Armbrustmacher testified

---

[2]Although not explicitly stated in his testimony, the $14,500 appears not to have been paid from the dwelling line of the claim, but from a separate, but unidentified line of coverage.

5

categorically that had HOIC known that A&P enterprises, and not the Moffits, owned the property, HOIC would never have issued the policy.

When questioned about the other alleged misrepresentations contained in the Application, Mr. Armbrustmacher testified that whether the Moffits' were retired; whether they had insurance policies cancelled in the past; whether there were outbuildings; or whether they conducted any business at home, while relevant for underwriting, were not dispositive factors in the decision to issue a policy. Mr. Armbrustmacher testified that any one of these factors may have resulted in further inquiry, but that no one misrepresentation would have been dispositive in a decision by HOIC to deny coverage at the time the Application was made.

### III. CONCLUSIONS OF LAW

HOIC seeks rescission of its insurance contract on the basis of the Moffits' alleged "material misrepresentations" in their Application for insurance. An insurer may rescind an insurance contract where "an insured makes a material misrepresentation in the application for insurance." *Lake States Ins. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998). Such a rescission renders the contract void *ab initio*. *Id.* "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995). Further, "an insurer has no duty to investigate or verify the representations of a potential insured." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 576 (Mich. 2012).

The misrepresentation is material if it substantially increases the loss insured against, such that if the insurer knew the truth:

(1) it would not have insured the risk; or

(2) it would have charged a higher premium.

*Oade v. Jackson Nat'l. Life Ins. Co. of Mich.*, 632 N.W.2d 126, 131 (Mich. 2001).

HOIC claims that the following representations made by the Moffits were "material" and allow it to void the contract:

(1)     that both Moffits were retired;

(2)     that the Moffits owned the property in question;

(3)     that the Moffits had not had insurance policies cancelled; and

(4)     that no business was conducted on the premises.

HOIC is not entitled to rescission.

Kenneth Armbrustmacher testified with respect to (1), (3), and (4) that even if these representations were not true at the time of the Application, HOIC may still have issued a policy to the Moffits. While he alluded that HOIC may have investigated more before making a coverage decision (particularly with regard to the issue of previously cancelled policies), he never stated that any of the above alleged misrepresentations would have resulted in a policy issuing with a higher premium than what the Moffits were charged. Further, there was insufficient testimony to establish by a preponderance of the evidence that (1), (3), or (4) were false at the time of the Application. Even if they were false Mr. Armbrustmacher's testimony does not establish by a preponderance of the evidence that HOIC would not have issued the policy or charged a higher premium. Therefore, under *Oade* and *Lake States*, HOIC is not entitled to rescission on these bases.

HOIC may have been entitled to rescind the policy on the basis of home ownership, had the Moffits represented to them that they indeed owned the house and th underlying property. However, the Application, as noted *supra*, never asks the applicant to identify the owner of the house or the

underlying land to be insured, let alone to represent that the applicant himself owns the house and underlying land. Mr. Armbrustmacher testified that because the form submitted to them was for "homeowners' insurance" HOIC assumed that because the Moffits were listed as "Applicant" that they both the house to be insured and the underlying property. He also testified that HOIC relies on independent agents such as Troy Seaver to confirm issues such as ownership and liens on properties to be insured.

The Application, however, is clear and unambiguous as to the issue of ownership. A person seeking to purchase an insurance policy would have no reason to think ownership was important to HOIC based on the Application. The Moffits were under no duty to supply information to HOIC for which it did not ask. If the issue of who owned the underlying property at the time of the insurance application was so important to HOIC, all it needed to do was add questions to the effect of "Do you own this property? Is/are there other titleholder(s) not listed as Applicant(s)?" Because HOIC did not ask such a basic question of the Moffits, it would be a misuse of this Court's equitable powers to rescind the insurance policy on the basis of the Moffits' failure to volunteer the information.

Further weighing of the equities reinforces this conclusion. "The underlying principle of the law of fixtures is represented by the maxim, *quic quid plantatur solo, solo cedit*, that is, that whatever is annexed to the soil becomes part thereof . . ." 2 Tiffany Real Prop. § 606 (3d ed.). Because a house is a fixture appurtenant to land, it is reasonable from an underwriting perspective to presume that the owner of underlying property is also the owner of a house located on that property. However, the evidence in this case shows that the Moffits, ignorant of the law of fixtures, believed that the house belonged to them even though the underlying property belonged to A&P. Assuming, *arguendo*, that the Moffits did represent on the Application that they owned the house,

the Court is inclined to indulge their ignorance of the law of fixtures. The policy for insurance that issued insures against perils to the structure of the house. The policy specifically excludes damage to the land on which dwelling structures are located (Pl. Ex. 2, Dkt. No. 232-4 at 32). Therefore, to the Moffits, what difference could it make who owned the underlying property?

Also weighing in the Moffits favor is an element of fundamental fairness inherent in the exercise of the Court's equity power. HOIC had relatively unequal bargaining power and sophistication in comparison to the Moffits. It therefore should have known that any structure attached to the land is legally part of the land. It further should have known the risks of insuring a structure with no knowledge of what types of liens or ownership issues might be attached to the underlying property on which the structure is situated. Considering these factors, it would be inequitable for this Court to give HOIC the relief it requests on the basis of who owned the house and underlying property when HOIC could have and should have sought this important information in the Application itself, but did not.

For the foregoing reasons, the Court finds that by a preponderance of the evidence, HOIC has failed to prove the Moffits made material misrepresentations on the Application of insurance. The Court therefore in find favor of the Moffits on HOIC's claim of contract rescission. The claim of unjust enrichment is therefore moot.

The Moffits have a surviving counter-claim against HOIC for breach of contract. The Moffits claim HOIC has breached its insurance contract by failing to pay the limits of their policy for the December 10, 2010, loss of their dwelling. The preponderance of the evidence shows the following:

(1) HOIC was prepared to pay a total of $260,000 under the dwelling line of the insurance based upon the replacement cost of the home; to date $178,480.50 has been

       paid ($170,620.50 to the Moffits and $7,860 in escrow to Lawrence Township);

(2)      HOIC issued, but stopped payment on, a check for $116,000.00 for the additional contents coverage of the policy;

(3)      HOIC issued, but stopped payment on, a check for $7,360.00 for additional living expenses; and

(4)      $14,500 for demolition expense.[3]

Therefore, based on what HOIC was prepared to pay under the policy prior to its attempt at rescission, there is $190,379.50 owing to the Moffits, less their $500 deductible for a total of $189,879.50.

## IV.   CONCLUSION

An order and judgment consistent with this opinion will not be entered at this time. Because of the recent government shutdown, the Assistant United States Attorney was unavailable to present the IRS's case on the issue of HOIC's interpleader claim. A limited trial on the merits of the interpleader will be held at a date to be noticed. After consideration of that case, the Court will enter judgment on the entire case. Because the resolution of the claims decided this date renders moot the Moffits' claim against Third-Party Defendants Marvin Okum Agency, Inc. and Troy Seaver, an order will issue dismissing without prejudice claims against all Third-Party Defendants.

Dated: October 21, 2013                    /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE

---

[3] As noted *supra*, the testimony of Mr. Jennings suggested that this amount was not paid from the dwelling, personal property, or additional living expenses lines of coverage.